HARRISON H. ATWOOD *vs.* CITY OF BOSTON.

Suffolk.    May 19, 1941. — October 27, 1941.

Present: FIELD, C.J., DONAHUE, DOLAN, & RONAN, JJ.

*Contract,* Construction, In writing, Architect. *Evidence,* Extrinsic affecting writings. *Practice, Civil,* Question of law or fact.

In the construction of a written contract of doubtful meaning, the conduct of the parties showing their interpretation of its meaning is of great weight.

Upon the admission of uncontradicted extrinsic evidence to aid in the construction of a written contract of doubtful meaning, the proper construction in the light of such evidence is a question of law for the court.

Under a contract requiring an architect to make plans for and supervise the construction of a proposed city building, providing that his services to the time when working drawings and specifications were ready should be "reckoned" at a specified percentage of the "actual cost" of the building, that further payments should be made to him during construction, "all of said payments . . . to be on account of the total commission," and that the city might discontinue his services and pay him to the time of the discontinuance "pro rata," the architect, upon the city's abandoning the project and discontinuing his services after he had completed working drawings and specifications and had been paid by the city the specified percentage of a sum which he himself had estimated as the cost of the building, was not entitled to a balance computed on the basis of the specified percentage of a larger sum stated in the contract as a sum which the cost should not exceed, but not as an estimate of cost.

CONTRACT. Writ in the Superior Court dated September 7, 1933.

The action was tried before *Swift*, J.

The plaintiff's claim was for $24,264, which was 3 2/5 per cent of $1,800,000, or $64,800, less the $40,536 paid him by the defendant.

*K. Hern*, Assistant Corporation Counsel, (*F. W. Roche*, Assistant Corporation Counsel, with him,) for the defendant.

*K. D. Johnson*, (*M. Chesley & J. D. Goodman* with him,) for the plaintiff.

DOLAN, J. This is an action of contract to recover a balance alleged to be due the plaintiff for services performed under the terms of a written agreement, entered into by the parties on November 12, 1929. The case was tried to a jury. At the close of the evidence the defendant moved for a directed verdict in its favor. The judge denied this motion, subject to the defendant's exception. The jury returned a verdict for the plaintiff in the amount of $34,-454.88, and the judge reserved leave, with the assent of the jury, to enter a verdict for the defendant. Thereafter the defendant's motion that this be done was denied by the judge and the defendant duly excepted. The case comes before us on the report by the judge of the questions raised by these exceptions of the defendant and by its exceptions to the admission of certain evidence, and to the refusal of the judge to grant certain of its requests for in-

structions. Under the terms of the report, if the judge's rulings and orders were correct, judgment is to be entered for the plaintiff on the verdict, and if his denial of the defendant's motion for a directed verdict or of its motion for entry of a verdict for it under leave reserved was incorrect, judgment is to be entered for the defendant.

The evidence in its aspect most favorable to the plaintiff tends to show the following facts: Under the terms of the contract the plaintiff agreed to render services, as an architect, in connection with the proposed construction of a high school building for girls in the "Martin District" in Boston, in the performance of which he was to make preliminary studies, to submit them to the defendant, to provide working drawings, specifications and blue prints, and to assume the active supervision of all construction work on the building and also of "landscape and domestic engineering."

The contract contained, among others, the following pertinent provisions: "SECTION 1. The Board.—(a). Is to furnish the Architect with the requirements and information for the design and construction of the said building and to give the maximum cubical contents and the cost for said building, which shall not be in excess of one million eight hundred thousand (1,800,000) dollars. . . . SECTION 3. (a). The City . . . is . . . to pay the Architect 2 2/5 per cent. upon the cost of the landscape and domestic engineering, exclusive of plumbing, and 6 per cent. upon the cost of all other work. The Board at any time may discontinue the services of the Architect, and if . . . [so] discontinued prior to the completion of the work to be done by the Architect under this contract, the value of the Architect's services shall be reckoned to the date of the discontinuance, and payment shall be made pro rata in accordance with the terms of this contract, and when made shall relieve the City from any further liability under this contract. (b). Payments to be made as follows: 1. When preliminary studies are completed, an amount not to exceed one-sixth of the estimated total commission, which total commission is to be based upon the estimated cost of the building, which estimated

cost is not to exceed the amount mentioned in Section 1 (a) of this contract. 2. When working drawings and specifications are ready for contract, Architect's services to that date shall be reckoned as 3 3/5 per cent. of the actual cost, but in no event in excess of 3 3/5 per cent. of the cost as designated in Section 1 (a) . . . . There shall be deducted from said 3 3/5 per cent. any sums previously paid for work done under this contract . . . 3. After the contract is let to do the work . . . additional payments are to be made to the Architect estimated at 2 2/5 per cent. of the amounts approved for payment to the contractor or contractors. All of said payments . . . to be on account of the total commission. 4. Final payment is not to be made . . . until the work is fully completed and the building finally accepted . . . ." The total appropriation ultimately made for the construction of the building was $1,119,995.71 and that made for "plans" was $110,000.[1]

The plaintiff completed the preliminary studies in accordance with the terms of the contract on or before December 28, 1929. On that date he submitted a bill to the city as follows:

"To professional services in the preparation of studies for the Girls High School, Worthington Street, Roxbury, in accordance with contract dated November 18, 1929,

| | | |
|---|---:|---:|
| Estimated cost of building, | | $1800000.00 |
| Estimated cost of Heating & Ventilating, | $144000.00 | |
| Estimated cost of Electrical work, | 90000.00 | |
| Estimated cost of Landscape engineering, | 20000.00 | |
| | $254000.00 | 254000.00 |
| | | $1546000.00 |
| 6% of $1546000.00 | $92760.00 | |
| 2 2/5% of $254000.00 | 6096.00 | |
| Total estimated commission | $98856.00 | |
| 1/6 of $98856.00............................ | $16476.00" | |

This bill was paid by the defendant on May 21, 1930.

On February 4, 1931, the plaintiff delivered to the defendant the "working drawings and specifications ready for

---

[1] The total appropriations when the contract was executed were, for construction of the building $1,071,762.12, for "plans" $110,000.

contract." On March 27, 1931, he presented a bill to the city in the following form:

"To professional services in the preparation of studies, working drawings and specification for the Girls High School, Worthington Street, Martin District, Roxbury, in accordance with contract dated November 18, 1929.

| | | |
|---|---:|---:|
| Estimated cost of building, | | $1300000.00 |
| Estimated cost of Heating & Ventilating, | $104000.00 | |
| Estimated Cost of Electric work | 65000.00 | |
| Estimated cost of Landscape engineering, | 5000.00 | |
| | $174000.00 | 174000.00 |
| | | $1126000.00 |
| 3.6% of $1126000.00 | $40536.00 | |
| Previous payment, | 16476.00 | |
| Due at this time, | $24060.00" | |

Accompanying this bill was a letter from the plaintiff to the defendant's superintendent of construction, which reads in part as follows: "At current prices I feel confident that this building could be placed under contract for a price not in excess of $1300000.00 and for that reason I am revising the figures to agree with the above in submitting a bill for services to date, a payment of three and three fifths per cent. on the above amount of $1300000.00 as the cost of the work, deducting the estimated cost of the electrical, heating and ventilating, and, landscape work; less the amount of the previous payment." The defendant paid this bill on April 21, 1931. The plaintiff had fully performed all the duties required of him under the contract up to that date. He never performed any services under the contract thereafter, and on June 16, 1933, the defendant notified him, in writing, that his contract was terminated because "the school will not be built" and that he had been paid in full for his services. The defendant never constructed the school building or any part thereof, and so far as appears no construction contracts were ever let in connection with the project.

While it is settled as matter of substantive law that contracts in writing cannot be varied by parol evidence, *Goldband* v. *Commissioner of Banks,* 245 Mass. 143, 150, nevertheless, for the purpose of applying the terms of such

contracts "to the subject matter, and removing or explaining any uncertainty or ambiguity which arises from such application, parol testimony is admissible, and has a legitimate office." *Stoops* v. *Smith,* 100 Mass. 63, 66. *Kennedy Bros. Inc.* v. *Bird,* 287 Mass. 477, 483. "The court, by the aid of extrinsic evidence, may put themselves in the situation of the parties and look at the contract from their standpoint. But from whatever source light may be thrown upon the contract . . . its meaning, what promises it makes, what duties or obligations it imposes, is a question of law for the court." *Smith* v. *Faulkner,* 12 Gray, 251, 255. The interpretation placed upon the contract by the parties as evidenced by their conduct is entitled to great weight. *Derby Desk Co.* v. *Conners Brothers Construction Co.* 204 Mass. 461, 470. *Wit* v. *Commercial Hotel Co.* 253 Mass. 564, 572. *R. H. Stearns Co.* v. *Anderson,* 304 Mass. 138, 145. Where there is conflicting evidence respecting the circumstances of the parties and the condition of the subject with which they are dealing, then a proper case arises for the jury. *Way* v. *Greer,* 196 Mass. 237, 246, 247. But where as appears in the present case the extrinsic evidence is not disputed or conflicting as to the material facts required to be found, the interpretation of the contract in its light still remains a question for the judge. *Smith* v. *Faulkner,* 12 Gray, 251, 255. Williston, Contracts (Rev. ed.) § 616. 65 Am. L. R. 648, 652. Construing the contract in question, guided by these principles, we are of opinion that the judge should have granted the defendant's motion for a directed verdict in its favor, and, accordingly, its motion for entry of verdict for it under leave reserved.

At the outset it is to be observed that the figure of $1,800,000 is fixed under § 1 (a) not as the estimated cost of the building, but only as a limit beyond which the cost of the building may not go. That this was the understanding of the parties is evidenced by the interpretation they placed upon the contract. When the plaintiff rendered his second bill and sent the accompanying letter to the defendant, in which, of his own volition, he based the charges

made for services to its date upon an estimated cost of $1,300,000, instead of $1,800,000, he must be taken to have recognized at that time that the ultimate basis upon which his total compensation was to be computed could not then be ascertained, and to have understood that the limit of cost of $1,800,000 was purely tentative and not a settled basis for computation of the amount to be paid for his services; and that, in the last analysis, actual cost (supported of course as required by law by sufficient appropriation, *Dyer* v. *Boston*, 272 Mass. 265, 273, 274) was to be the true basis upon which payment for his services was ultimately to be measured as provided in § 3 (b) 2 of the contract.

The seeming conflict between references in the contract to estimated cost and actual cost is solved by a reading of the contract as a whole in the light of the subject to which it is related, that is, the construction of the building. It is obvious that, until the preliminary studies had been made and the working drawings and specifications "ready for contract" had been prepared by the plaintiff upon "full instructions" furnished by the defendant, no contracts could be let for the construction of the building, and actual costs could not be ascertained, and that necessarily the provisions for payment for particular services of the plaintiff, just referred to, upon their completion could not be fixed for the time being other than tentatively upon an estimated cost. Doubtless it was in recognition of this fact that, in fixing the ultimate basis of the plaintiff's compensation, "actual cost" was prescribed by § 3 (b) 2 of the contract, which also provided that there should be deducted from the percentage of "actual cost" fixed for payment any sums previously paid for work done by the plaintiff under the contract, thus permitting adjustments to be made on the basis of actual costs, from time to time, as the construction of the building progressed and such costs would be ascertained. That this was the understanding of the plaintiff, as before pointed out, was evidenced in express terms by his second bill and the accompanying letter sent by him to the defendant. The payment of the bill was

evidence of like understanding on the part of the defendant.

We are of opinion that, under the terms of the contract, read in the light of the subject to which it relates and the interpretation placed upon it as evidenced by the conduct of the parties themselves, upon the termination of the plaintiff's contract and the abandonment of the main project before construction, no basis existed under the contract for the payment of additional compensation to the plaintiff, and that therefore nothing is due him under the contract, upon the terms of which alone he relies.

It follows that under the terms of the report, judgment must be entered for the defendant, and it is

*So ordered.*