In re Matthew SIMON, Individually, and as Trustee of the 466 Broadway Trust, and Trustee of the 616 Realty Trust, Debtor.

Bankruptcy No. 92–41246.

United States Bankruptcy Court, D. Massachusetts.

March 16, 1995.

**2**

Marc S. Siegle, for Sidney Simon.

Peter Stern, Chapter 7 Trustee.

Mark Berman, for NJR.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination is a "Motion to Compel the Trustee to File an Objection to Claim or Alternatively to Allow a Creditor to Object to the Claim of Another Creditor" ("Motion to Compel") filed by a creditor, Sidney Simon ("Sidney"). Through his Motion to Compel, Sidney asks the Court to order the Chapter 7 Trustee in Bankruptcy[1] to object to a proof of claim filed by NJR Construction Co. ("NJR"), or alternatively seeks an opportunity to object to NJR's claim.

## I. BACKGROUND

In 1987, the debtor Matthew Simon ("Simon" or the "Debtor") was an active real estate developer and held beneficial interests in various trusts and partnerships, including

the 616 Realty Trust (the "Trust"), a nominee trust created by Declaration of Trust dated March 10, 1987 and recorded with the Middlesex County Registry of Deeds. On or around March 10, 1987, NJR, Joseph R. Nogueira, individually and as trustee of the Boston Avenue Realty Trust and Rosemarie Nogueira, individually, (collectively, the "Contracting Parties") entered into a contract with Simon, in his capacity as trustee of the Trust, for the construction of a 54-unit residential condominium project at 616 Boston Avenue, Medford, Massachusetts.

Over a period of several months during the course of the construction, disputes arose between the parties over the performance of the construction project. Notwithstanding various agreements and attempts to resolve the disputes, NJR, claiming a contractual right to arbitration, filed with the American Arbitration Association a demand for arbitration of certain of the disputes between the parties. Simon, in his capacity as trustee of the Trust, refused to submit to the arbitration process. On January 10, 1990, the arbitrator entered an award ordering Simon, as trustee of the Trust, to pay to NJR a total of $403,263.19, including arbitration costs.

Shortly thereafter, NJR commenced an action in the Commonwealth of Massachusetts, Superior Court Department of the Trial Court, Middlesex Division (the "Middlesex Superior Court") against Simon, as trustee of the Trust, to confirm the arbitration award (the "Arbitration Action"). None of the beneficiaries were individually named as defendants in the Arbitration Action. On May 22, 1990, NJR obtained a judgment (the "Judgment")[2], pursuant to Mass.Gen.Laws Ann. ch. 251, § 11, confirming the arbitration award in the amount of $403,263.19. Simon, as trustee of the Trust, then filed an appeal to the Massachusetts Appeals Court from the Judgment and from the denial of certain post-judgment motions which had been filed by him in connection with the underlying lawsuit.

---

1. Peter M. Stern, Esq. was appointed as the Trustee in Bankruptcy on May 5, 1992.

2. NJR filed a proof of claim on October 13, 1993, in the amount of $496,013.72, together with in-

terest accruing since 4/27/92, which amount represents the judgment obtained on May 22, 1990 in the Middlesex Superior Court.

Following that appeal, on September 16, 1991, the Contracting Parties, together with Simon, *individually and as trustee of the 616 Realty Trust*, executed a settlement agreement (the "Settlement Agreement") and mutual releases.[3] Pursuant to the Settlement Agreement, NJR signed a release (the "Release") that forever discharged "Matthew Simon and the 616 Realty Trust" from all claims that NJR ever had against them, including claims arising out of a previously filed action, not relevant here. *However,* the Release excepted rights and obligations arising from the Settlement Agreement itself, including the right to enforcement of the Judgment (the "Release Exceptions"). Pursuant to the Settlement Agreement, NJR also agreed not to seek the issuance of an execution on the Judgment until November 3, 1991, on the condition that "Simon agrees that on or before November 3, 1991, neither he nor any of his agents ... shall transfer, convey, assign, spend, encumber, pledge, bequeath, distribute, or otherwise divest himself or themselves of any asset or any interest in an asset now belonging to Simon."

On December 9, 1991, an execution was issued on the Judgment by the Middlesex Superior Court against Simon, as trustee of the Trust, in the amount of $478,191.36.

Approximately four months later, on April 27, 1992, Simon, individually, and as trustee of the 466 Broadway Trust and trustee of the 616 Realty Trust, filed a voluntary petition[4] in this Court under Chapter 7 of the Bankruptcy Code.

On July 6, 1992, NJR filed a Motion for Relief from Stay in order to exercise its rights as a judgment creditor against the Simon, nominally in his capacity as trustee of the Trust, and against the non-debtor beneficiaries of the Trust. At the time of the filing of the Motion for Relief from Stay, the Schedule of Beneficiaries of the Trust listed the following beneficiaries: Sidhew Associates (of which Simon is a general partner and 50% owner), Simon[5], Jill K. McCarthy, Robert S. Saunders ("Saunders"), Douglas J. White and Alexander Bustamante. No opposition was filed and the Motion for Relief from Stay was allowed by the Court (Queenan, J.) on July 20, 1992. Shortly thereafter, Saunders commenced an action against NJR in the Middlesex Superior Court (Civil Action No. 92–07225C) seeking a declaratory judgment that none of the beneficiaries of the Trust were individually liable for any claims by NJR arising out of the Arbitration Action and Judgment against the Trust. NJR countered with a request for a preliminary injunction, real estate and equitable attachments against the assets of the individual beneficiaries of the Trust. Superior Court Judge McHugh denied the pre-judgment relief sought by NJR, noting that (1) since NJR had elected to file the Arbitration Action against the Trust only and not against the individual beneficiaries, NJR could not satisfy the Judgment against the Trust from the personal assets of the individual beneficiaries, and (2) paragraph nine (9) of the Declaration of Trust provided that creditors could "look only to the trust estate or corpus and not to the Trustee individually nor to the beneficiaries" for payment.[6]

NJR then commenced another action against the beneficiaries of the Trust in the Middlesex Superior Court (Civil Action No. 93–06407) alleging that the beneficiaries were personally liable for the obligations of the Trust. The defendants in this action, Saunders and Sidney, each filed a motion to dismiss. The court treated the motions to dismiss as motions for summary judgment and in a memorandum of decision, dated May 18, 1994, Superior Court Judge Hely held that "as a matter of law, NJR's release of the Trust operated as a release of the Trust beneficiaries from any pre-existing claim arising out of NJR's dealings with the Trust." Judge Hely determined that the

---

3. See "Settlement Agreement" filed in open Court on September 20, 1994.

4. In Schedule "F", NJR's claim is listed as liquidated, noncontingent and undisputed in the amount of $450,000.

5. In its Motion for Relief from Stay, NJR stated that it was not seeking to proceed against the Debtor's 29.925% beneficial interest in the Trust or against the Debtor individually.

6. The Declaration of the Trust is included as Exhibit "C" of the Motion to Compel.

claims against Sidney and Saunders had been released because those claims were not included in the Release Exceptions. Those claims were derived neither from the Settlement Agreement nor from the Judgment.

On March 21, 1994, the Trustee filed an objection to various proofs of claim, including the claim filed by NJR. At a hearing held on June 2, 1994, the Trustee withdrew his objection to NJR's claim. Approximately one month later, Sidney filed his Motion to Compel. The Trustee filed an objection thereto. After a hearing, the Court took the Motion to Compel under advisement.

## II. POSITIONS OF THE PARTIES

Through his Motion to Compel and arguments presented at the hearing, Sidney asserts that NJR should not be entitled to satisfy its Judgment from the personal assets (i.e., the estate) of Simon (against which Sidney has a substantial unsecured claim). Firstly, Sidney argues that the above-referenced decisions of Judge Hely and Judge McHugh clearly indicate that NJR is precluded from asserting a claim against the individual beneficiaries of the Trust. Secondly, Sidney points to the language of the "Declaration of Trust" which expressly prohibits a third party from asserting contractual rights against the Trustee in his individual capacity or against the beneficiaries.

In response to Sidney's argument, NJR and the Trustee assert that Sidney's reliance on Judge Hely's and Judge McHugh's decisions is misplaced. While they acknowledge that, as a matter of law, the Release extinguished any liability of Sidney, Saunders and any other beneficiaries under the Trust, they note that the Release specifically excepted any rights and obligations arising *from the Settlement Agreement*. The Trustee reminds the Court that the Settlement Agree-ment was executed by the Debtor, *individually,* and in his capacity as Trustee of the Trust, and NJR was, therefore, entitled after November 3, 1991 to pursue Simon.[7] The Trustee also notes that the Debtor filed his petition, individually *and* as Trustee of the 616 Realty Trust, and listed NJR's claim as undisputed, non-contingent and liquidated.

## III. DISCUSSION

A. *Did Simon obligate himself personally under the Settlement Agreement?*

■ The determination of Simon's individual liability under the Settlement Agreement calls for an interpretation of the Settlement Agreement and mutual releases. Simon was *not* individually named in (1) the March, 1987 construction contract, (2) the Arbitration Action, or (2) the Judgment. Moreover, the Trust included a provision which shielded the trustee and beneficiaries, individually, from any contractual liability under the Trust. However, Simon did execute the Settlement Agreement and the mutual releases in his *individual* capacity *and* in his capacity as Trustee of the Trust. Therefore, it is only in the context of the Settlement Agreement and the mutual releases executed in connection therewith, that Simon may have obligated himself personally.

The difficulty in interpreting the Settlement Agreement and mutual releases lies with the ambiguities contained within the documents themselves. The Settlement Agreement begins "[t]his agreement is entered into on the 16th day of September, 1991 by and between Matthew Simon, individually and as he is Trustee of the 616 Realty Trust ... ("*Simon*")." (emphasis supplied). The defined term "Simon" is used throughout the Settlement Agreement and the mutual releases without differentiation between Simon, in his individual capacity,

7. The language of the Settlement Agreement provides in relevant part:

3. Simon understands and acknowledges that upon the withdrawal of his appeal from the judgment entered in the arbitration lawsuit, NJR intends to forthwith ask that an execution issue for the full amount of the judgment together with all interest accrued since the date of entry of judgment. Notwithstanding the issuance of such execution, however, NJR agree not to take any action to enforce said execution until or after November 3, 1991. 4. On or after November 3, 1991, Simon acknowledges and agrees that NJR shall have the right to take any and all actions necessary or appropriate to collect all sums due to it under the execution which shall hereafter issue in connection with the arbitration lawsuit. See "Settlement Agreement" filed in open court on September 20, 1994.

and Simon in his trustee capacity. For example, paragraph seven (7) of the Settlement Agreement provides "[o]n January 10, 1990, the arbitrator entered an award ordering Simon to pay to NJR a total of $403,263.19, including arbitration costs." Although there is no dispute that the arbitration award was entered against Simon in his capacity as Trustee of the Trust, and not individually, the Settlement Agreement fails to make any distinction.

■ The Settlement Agreement also includes an integration clause which provides:
[t]his Agreement contains the entire agreement between the parties and there are no agreements, promises, terms, conditions or understandings and no representations or inducements leading to the execution hereof, express or implied, other than those described above and herein set forth. No oral or prior written matter extrinsic to this Agreement shall have any force or effect.

However, the purpose of the integration clause fails when the ambiguities in the language of the Settlement Agreement and mutual releases require extrinsic evidence to make sense of the document. In such a case, the Court must look behind the language to determine the parties' intent in executing the agreement. *See Atwood v. City of Boston,* 310 Mass. 70, 73, 37 N.E.2d 131, 134 (1941), *citing, Stoops v. Smith,* 100 Mass. 63, 66 (1868) (parol evidence is admissible for the purpose of explaining any uncertainty or ambiguity in a contract); *Petricca Construction Co. v. Commonwealth,* 13 Mass.App.Ct. 981, 432 N.E.2d 545 (1982) (when the meaning of an instrument is not plain or becomes doubtful in its application to a particular transaction, extraneous evidence is admissible to explain the significance of terms used).

Accordingly, an evidentiary hearing is necessary to determine whether NJR acquired a claim against Simon individually under the Settlement Agreement and whether that claim is valid and enforceable.

B. *If Simon is not personally liable under the Settlement Agreement, is any part of the estate liable?*

■ If Simon is not personally liable to NJR, but NJR has a claim against the Trust alone, the question remains as to whether NJR retains any claim against the estate. Stated otherwise, is the Trust res also property of the estate? The Debtor has exacerbated the confusion by captioning his case as "Matthew Simon, Individually, and as Trustee of the 466 Broadway Trust and Trustee of the 616 Realty Trust."

Section 541(b)(1) provides in relevant part that "[p]roperty of the estate shall not include ... any power that the debtor may exercise for the benefit of any entity other than the debtor ...[.]" 11 U.S.C. § 541(b)(1).

The Trust in this case is a nominee trust, in that the powers of the trustee are "subject to the direction or consent of the beneficiaries." [8] *See generally,* 1 James F. Queenan, Jr. et al., *Chapter 11 Theory and Practice: A Guide to Reorganization,* § 6.05 (1994). Moreover, the Trust can not be terminated without the consent of the beneficiaries, and, upon such termination, the trust res is to be distributed to the beneficiaries "subject to any lease, mortgages, contracts, and other encumbrances, or matters affecting the trust estate ... in proportion to their respective interests." (Declaration of Trust, par. 5).

■ In this case, Simon's beneficial interest in the Trust constituted less than 100% of the total and, pursuant to § 541(b)(1), the estate relative to the Trust is limited to Simon's beneficial interest in the Trust. Property of the estate does not extend any further than Simon's beneficial interest in the Trust. *See In re Eastmare Development Corp.,* 150 B.R. 495, 498 (Bankr.D.Mass.1993) (property of the estate includes debtor's equitable ownership of nominee trust); *In re Dreske,* 25 B.R. 268 (Bankr.E.D.Wisc.1982); *see also,* 1 James F. Queenan, Jr. et al., *Chapter 11 Theory and Practice: A Guide to Reorganization,* § 9.23. The Trust itself is not a debtor before the Court. The captioning of Simon as "Trustee of the 616 Realty Trust" adds no assets to

8. See Declaration of Trust, Par. 4.

property of this estate, nor does it expand the estate's liability.

Furthermore, even the approach suggested in the case of *In re Medallion Realty Trust,* 120 B.R. 245 (Bankr.D.Mass.1990) would not result in the inclusion of the Trust res as property of the estate. In *Medallion,* the court held that, upon sufficient facts, a nominee realty trust could be an eligible debtor, but would be treated as a partnership. 120 B.R. 245. However, if the Trust could qualify as a debtor under *Medallion,* it could not maintain its status as a debtor in this case, pursuant to 11 U.S.C. § 302.

▪ Section 302 provides in relevant part "[a] joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse." 11 U.S.C. § 302(a). Under § 302, spouses may file a joint petition. However, an "individual" and his/her spouse are the only "persons", as defined by 11 U.S.C. § 101(30), who may file a joint petition. *Fitzgerald v. Hudson (In re Clem),* 29 B.R. 3, 4 (Bankr.D. Idaho 1982); *see also In re 4-1-1 Florida Georgia, L.P.,* 125 B.R. 565, 566 (Bankr.W.D.Mo.1991); *In re Lam,* 98 B.R. 965, 966 (Bankr.W.D.Mo.1988). The legislative history also identifies a congressional intent to limit a joint case to a "voluntary bankruptcy case concerning a wife and husband." *In re Malone,* 50 B.R. 2, 3 (Bankr.E.D.Mich.1985), *quoting,* S.Rep. No. 989, 95th Cong., 2nd Sess. 32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5818. Therefore, were the Trust itself to qualify as a debtor under *Medallion,* the Simon and Trust estates would be impermissibly joined.

▪ In view of the foregoing, the only portion of the Trust constituting property of the estate is Simon's beneficial interest therein. Therefore, if Simon is not personally liable to NJR under the Settlement Agreement, NJR will not be able to assert a general claim against the estate just because Simon has chosen to include his status as Trustee in the caption of the case.

C. *Does creditor, Sidney Simon, have standing to object to NJR's claim?*

Sidney's Motion to Compel requests an order compelling the Trustee in Bankruptcy to object to NJR's claim, or alternatively, allowing Sidney to object to NJR's claim. It appears impractical to order the Trustee to pursue an objection that the Trustee wishes to abandon. The Court, therefore, will consider whether a creditor has standing to object to another creditor's proof of claim.

Section 502(a) provides in relevant part "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). Bankruptcy Rule 3007 establishes the procedure for filing an objection to a proof of claim. The rule provides:

> [a]n objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing. If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding.

Fed.R.Bankr.P. 3007. While § 502(a) and Bankruptcy Rule 3007 provide little guidance on whether a creditor may object to a proof of claim, the Advisory Committee Note to Rule Bankruptcy 3007 comments briefly on this issue:

> [w]hile the debtor's other creditors may make objections to the allowance of a claim, the demands of orderly and expeditious administration have led to a recognition that the right to object is generally exercised by the trustee. Pursuant to § 502(a) of the Code, however, any party in interest may object to a claim. But under § 704 the trustee, if any purpose would be served thereby, has the duty to examine proofs of claim and object to improper claims.

Fed.R.Bankr.P. 3007 (Advisory Committee Note 1983).

▪ Several courts, including the First Circuit, have ruled that a creditor may seek leave from the court to object to a proof of claim *only* if the trustee refuses to take any

action. *See Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1147 (1st Cir. 1992) ("Leave to object is not generally accorded an individual creditor unless the chapter 7 trustee refuses to object[.]"); *Werth v. First Interstate Bank of Denver, N.A. (In re Werth)*, 54 B.R. 619, 622 (D.Colo.1985); *In re Sinclair's Suncoast Seafood, Inc.*, 140 B.R. 588, 592 (Bankr.M.D.Fla.1992); *In re Morrison*, 69 B.R. 586, 589 (Bankr.E.D.Pa.1987); *In re The Charter Company*, 68 B.R. 225, 227 (Bankr.M.D.Fla.1986); *see also* 3 COLLIER ON BANKRUPTCY § 502.01 (15th ed. 1993) ("The most important qualification attached to the right of a creditor to object is that it is the trustee who acts as the spokesman for all the creditor in discharge of the trustee's duty unless the trustee refuses to take action", *citing, Fred Reuping Leather Co. v. Fort Greene National Bank*, 102 F.2d 372 (3d Cir.1939)).

The objecting creditor must also establish that if the objection to the proof of claim were sustained, there would be some benefit to the estate. *See In re Sinclair's Suncoast Seafood, Inc.*, 140 B.R. at 592. Such a requirement upholds the policy of maintaining the orderly administration of the estate. The Editors' Comment to Bankruptcy Rule 3007 astutely recognizes that "[i]f every creditor were entitled to challenge the claim of another creditor filed in a particular case, an orderly administration could degrade to chaos." Fed.R.Bankr.P. 3007 (Norton Bankruptcy Code Pamphlet 1994–95 ed., Editors' Comment).

■ Sidney has established that its objection to NJR's claim against Simon individually is colorable on account of the ambiguities contained in the Settlement Agreement. In view of the foregoing, the Court hereby grants Sidney leave to file an objection to NJR's claim.

## IV. CONCLUSION

The Court grants the Motion to Compel insofar as Sidney is granted leave to object to the claim of NJR. When and if filed, the objection will be scheduled for a pre-trial conference in advance of the scheduling of an evidentiary hearing on the sole issue of whether NJR has a valid and enforceable claim against the estate arising out of the Settlement Agreement.