**In re John H. CHOQUETTE, Jr., Debtor.**

**No. 99–47802–HJB.**

United States Bankruptcy Court, D. Massachusetts.

March 17, 2003.

Jack Houghton, Pittsfield, MA, Chapter 7 Trustee.

David J. Noonan, Amherst, MA, for debtor.

Irving D. Labovitz, Springfield, MA, for Berkshire Bank.

Neil C. Geroux, North Adams, MA, Edward F. Senecal.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is the "Debtor's Motion For Leave Of Court To File And Prosecute Objections To Certain Claims" (the "Motion"). Relying on 11 U.S.C. §§ 704 [1] and 726(a)(6) [2] of the Bankruptcy Code (the "Code") and Bankruptcy Rule 3007,[3] John H. Choquette, Jr. (the "Debtor") seeks leave to object to certain claims filed against the bankruptcy estate. Berkshire Bank (the "Bank") [4] opposes the Motion arguing that only the Chapter 7 trustee (the "Trustee") has standing to object to claims filed against the estate and on equitable grounds.

## I. TRAVEL OF THE CASE AND POSITIONS OF THE PARTIES

On December 21, 1999, the Debtor filed a voluntary Chapter 7 petition in this Court. Jack Houghton was appointed Trustee.[5] On December 8, 2000, the Trustee filed an adversary proceeding against the Debtor, objecting to discharge and seeking the avoidance of alleged fraudulent transfers. After some discovery and negotiation, the Debtor and the Trustee ultimately reached a settlement (the "Settlement Agreement"), denominated as an "Agreement for Judgment." It was approved by the Court on October 3, 2001, without objection from any party in interest. Among other things, under the Settlement Agreement, the Debtor's discharge was denied pursuant to 11 U.S.C. § 727(a)(3), the Debtor was required to make full payment plus interest in satisfaction of all claims against the estate "as finally allowed," [6] and the Trustee was permitted to liquidate any and all properties of the Debtor to that end.

In the interim, on April 11, 2001, the Trustee filed a set of objections (the "Trustee Objections") to certain claims against the estate. They were sustained

1. Section 704 lists the duties of the *trustee* and include: "(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper; (6) if advisable, oppose the discharge of the debtor." 11 U.S.C. § 704(5), (6).

2. Section 726(a) mandates the order in which estate property is distributed in satisfaction of allowed claims against the estate and provides in pertinent part that "[E]xcept as provided in section 510 of this title, property of the estate shall be distributed... (6) sixth, to the debtor." 11 U.S.C. § 726(a)(6).

3. Bankruptcy Rule 3007 states that:

    [A]n objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing. If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding.

Fed. R. Bankr.P 3007.

4. The Motion was originally opposed also by another claimant, Edward Senecal. That claim has been resolved consensually between the Debtor and the claimant.

5. On May 17, 2000, the Debtor moved to convert the case to Chapter 13. On July 7, 2000, the Court overruled the Trustee's opposition to that motion and allowed the conversion. The case did not remain in Chapter 13 long. On October 18, 2000, the Court granted the Chapter 7 trustee's motion to reconvert the case to Chapter 7. On October 24, 2000, Mr. Houghton, vindicated, was reappointed Trustee.

6. Pursuant to Paragraph 8 of the Settlement Agreement, the parties stipulate that "all claims as finally allowed, administrative fees and costs, in [the case] concerning the Debtor ... shall be paid in full by the Debtor ... with interest". Pursuant to paragraph 11 of the Settlement Agreement, "the Debtor reserves any and all rights under appropriate bankruptcy and non-bankruptcy law."

and the Trustee filed no further claims objections. However, on May 6, 2002, the Debtor filed the instant Motion along with the "Debtor's Objections To Certain Claims," which listed objections to six additional proofs of claims including those of the Bank.[7]

The Debtor points to § 704 of the Code and Rule 3007 as authority for his standing to object to claims. He argues that, although the terms of the Settlement Agreement require him to fund a 100% payment to all creditors and administrative claimants, a surplus of estate assets will likely exist at the close of the case. Under the statutory distribution scheme mandated by § 726(a)(6), he will be entitled to that surplus and therefore has a pecuniary interest in the total amount of claims allowed. Further, the Debtor argues that he has satisfied the test set forth by the First Circuit in *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136 (1st Cir.1992). The Debtor maintains that *In re Thompson* held that a Chapter 7 debtor may seek leave of court to object to claims if: 1) the trustee does not intend to object; and 2) the debtor has a pecuniary interest arising from a demonstrable surplus.

The Bank opposes the Motion on both legal and equitable grounds. The Bank argues that the First Circuit, in *In re Thompson*, held that a Chapter 7 debtor has no standing to challenge a court order approving a compromise of claim-related litigation absent a "compelling showing that the chapter 7 trustee *failed or refused to perform a fiduciary duty* imposed by the Bankruptcy Code." 965 F.2d at 1148 (emphasis supplied). In essence, the Bank maintains that *In re Thompson* contem-

plates an abdication of fiduciary duty by a Chapter 7 trustee before a debtor can acquire the necessary standing. It contends that the Trustee neither refused nor failed to carry out a fiduciary duty here. On the contrary, the Trustee investigated the claims and deliberatively opted not to object to them.[8] In sum, the Bank maintains that the *In re Thompson* court precluded debtor standing to object to claims in favor of the diligent Trustee. Ultimately, even the debtor demonstrating a pecuniary interest must predicate his standing on the fiduciary failures, not merely indifference, of the Chapter 7 trustee.

Alternatively, the Bank argues the Motion should be denied based on the equitable doctrines of unclean hands and laches. The Bank contends that the Debtor's bad acts, alleged in the adversary proceeding and resulting in the denial of discharge, preclude conferral of standing to usurp the judgment of the Trustee to object (or not object) to claims. Lastly, the Bank states that the Debtor knew for almost a year that the Trustee would not object to the Bank's claim and, accordingly, the doctrine of laches precludes such an objection at this time.

## II. *DISCUSSION*

### A. *Chapter 7 debtor standing to object to claims under § 502.*

■ Section 502(a) of the Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a *party in interest* ... objects." 11 U.S.C. § 502(a) (emphasis supplied). While establishing the procedural requirements for objecting to

---

7. The debtor sought leave on a variety of grounds to object to six claims totaling approximately $264,391.00. The Bank's claim is in the amount of $135,484.83. It was not included in the original Trustee Objections.

8. At the hearing on the Motion, the Trustee testified that based upon his investigations, he was not inclined to file an objection to the Bank's proof of claim.

claims under § 502, Rule 3007 does not delimit who is permitted to object. Fed. R. Bankr.P 3007. Identification of those who would qualify as a "party in interest" is not provided in the Code. *McGuirl v. White,* 86 F.3d 1232, 1234 (D.C.Cir.1996). As an initial matter, therefore, courts confronting the issue of a Chapter 7 debtor's standing to object to claims must look elsewhere to fashion a definition for "party in interest." *See In re Thompson,* 965 F.2d at 1141 (resorting to the commentary to the Bankruptcy Rules to define "parties in interest"); *Kapp v. Naturelle, Inc.,* 611 F.2d 703, 707 (8th Cir.1979) (describing a party in interest as one with pecuniary interests in estate distributions); *United States v. Jones,* 260 B.R. 415, 418 (E.D.Mich.2000) (concluding that "party in interest" is nowhere defined in the Code and turning to case law for guidance); *Caserta v. Tobin,* 175 B.R. 773, 774 (S.D.Fla.1994) (stating that "[c]ongress has not however defined the term 'party in interest.' "); *In re Sobiech,* 125 B.R. 110, 113 (Bankr.S.D.N.Y.1991) (" 'Party in interest' is not a defined term ... a party in interest is one who has an interest in the debtor's case. Thus the debtor is a party in interest as is the trustee") (quoting 8 L. KING, COLLIER ON BANKRUPTCY ¶ 3007.03[2] (15th ed.1990)).

Perhaps understandably then, a murky split of authority in the case law has emerged as a result of courts responding to different fact patterns. However, basic themes have emerged. The majority of courts have held that a Chapter 7 debtor has standing to object to claims where one or more of the following factual requisites obtained: 1) the debtor had a pecuniary interest in the result by way of a demonstrable surplus; 2) the trustee failed or refused to object to the claim or claims in question; and/or 3) the debtor's objection would not undermine the efficient administration of the estate. *See In re Thompson,*

965 F.2d at 1141 and 1147 (holding that a Chapter 7 debtor had appellate standing to object to a settlement of claims litigation only where the trustee failed or refused to perform a fiduciary duty); *In re El San Juan Hotel,* 809 F.2d 151, 154 (1st Cir. 1987) (holding that the "person aggrieved," an analogue to the "party in interest," had appellate standing when that person's rights or interests were " 'directly and adversely affected pecuniarily' by the order or decree of the bankruptcy court") (quoting *In re Fondiller,* 707 F.2d 441, 442 (9th Cir.1983)); *Willemain v. Kivitz,* 764 F.2d 1019, 1022 (4th Cir.1985) (holding that only solvent debtors had standing in bankruptcy court); *United States v. Jones,* 260 B.R. at 418 (holding that a debtor with no hope of a surplus from the estate had no standing to object); *In re Gribben,* 158 B.R. 920, 922 (S.D.N.Y.1993) (holding that assignment of all claims related causes of action to the trustee promoted orderly asset collection); *In re Sun OK Kim,* 89 B.R. 116, 118 (D.Haw.1987) (holding that leave of court secured after formal refusal by the trustee to object to a claim or trustee wrongdoing could confer standing to object upon the debtor); *In re Savidge,* 57 B.R. 389, 392 (D.Del.1986) (holding that in order to uphold orderly administration of the estate, the trustee must be noticed and refuse to object before the debtor could obtain court ordered standing to object); *Silverman v. Leucadia, Inc.,* 37 B.R. 200, 201 (S.D.N.Y.1982) (holding that only the debtor that "demonstrated that the disallowance of the claim would produce a surplus in the estate which would be available to the bankrupt" had standing to object); *In re Bakke,* 243 B.R. 753, 755 (Bankr. D.Ariz.1999) (holding trustee refusal and application to the court to be precursors to debtor standing); *In re I & F Corp.,* 219 B.R. 483, 485 (Bankr.S.D.Ohio 1998) (holding that standing resided statutorily with

the trustee as the appointed estate representative to ensure expeditious, cost effective case disposition); *In re Woods*, 139 B.R. 876, 877 (Bankr.E.D.Tenn.1992) (stating that, absent surplus, debtor standing to object is a threat to judicial economy because it would "permit [the debtor] to usurp the trustee's authority and … require the court to rule on objections where the allowance or disallowance of the claim is meaningless to the administration of the estate"); *but see Mulligan v. Sobiech*, 131 B.R. 917, 921 (S.D.N.Y.1991) (debtor is a de facto party in interest with standing to object to claims untethered from considerations of surplus or trustee action); *cf. In re Simon*, 179 B.R. 1, 6–7 (Bankr.D.Mass. 1995).[9]

At the hearing on the instant Motion, the Trustee stated the following: 1) pursuant to the Settlement Agreement, the Debtor agreed to satisfy all claims and administrative expenses of the estate in full, *as finally allowed;* 2) the Trustee stands ready to liquidate numerous properties in which the Debtor has an interest in order to ensure such payments; 3) the Debtor reserved his rights under bankruptcy law; and 4) referring to the Settlement Agreement's terms regarding the Debtor's right to object to claims, "[a]s opposed to making a specific reference to the issue today, *that is his option to file objections to claims.*" Jack Houghton, Chapter 7 trustee, *Transcript of the Hear-*

*ing on the Motion, July 10, 2002,* pp 6–9 (emphasis supplied). Notwithstanding the trustee's personal disinclination to object to the claims, he appears indifferent to the Debtor objecting to the claims. This comports with the line of cases that require trustee approval at maximum, and an absence of trustee opposition at minimum, to permit debtor standing. *See In re Savidge,* 57 B.R. 389, 392 (D.Del.1986) (stating that to uphold orderly estate administration, the trustee must be noticed and refuse to object before the debtor could obtain court ordered standing to object); *see also Mulligan* 131 B.R. at 920 (finding that the trustee did not oppose the debtor objecting to the claim).

■ This Court agrees with the Bank that *In re Thompson* indeed established a two-prong, conjunctive test to determine whether a Chapter 7 debtor had standing to object to creditor claims. First, the debtor must demonstrate that he/she is a party aggrieved by the allowance of the claim. The *In re Thompson* court noted in dicta that although the Chapter 7 debtor is not *normally* considered a "person aggrieved" (as previously noted, an analogue to a "party in interest"):

> [t]here are two exceptions: (1) *if the debtor can show that a successful appeal would generate assets in excess of liabilities, entitling the debtor to a distribution of surplus under Bankruptcy Code § 726(a)(6),* 11 U.S.C. § 726(a)(6) … or

---

9. In the related matter of *creditor standing* to object to claims, this Court has previously noted authority within the First Circuit and elsewhere stating:

> a creditor may seek leave from the court to object to a proof of claim *only* if the trustee refuses to take any action. *See Kowal v. Malkemus (In re Thompson),* 965 F.2d 1136, 1147 (1st Cir.1992) ("Leave to object is not generally accorded an individual creditor unless the chapter 7 trustee refuses to object[.]''); *Werth v. First Interstate Bank of Denver, N.A. (In re Werth),* 54 B.R. 619, 622

(D.Colo.1985) … *see also* 3 COLLIER ON BANKRUPTCY § 502.01 (15th ed. 1993) ("The most important qualification attached to the right of a creditor to object is that it is the trustee who acts as the spokesman for all the creditors in discharge of the trustee's duty unless the trustee refuses to take action", *citing Fred Reuping Leather Co. v. Fort Greene National Bank,* 102 F.2d 372 (3rd Cir.1939)).
*In re Simon,* 179 B.R. 1, 6–7 (Bankr.D.Mass. 1995) (emphasis in original).

(2) the order appealed from affects the terms of the debtor's discharge in bankruptcy.

965 F.2d at 1144, n. 12 (emphasis supplied). Second, the debtor must show that the Chapter 7 trustee has "failed or refused to perform a fiduciary duty imposed by the Bankruptcy Code." *Id.* at 1148.

In this case, it is undisputed that the Debtor will reacquire estate property by way of surplus, pursuant to § 726(a)(6). And the size of that surplus is contingent upon the amount of the final allowed claims against the estate. The Debtor, by demonstrating a pecuniary interest in the outcome of claims objections, has therefore satisfied the first test for standing discussed by the *In re Thompson* court. 965 F.2d at 1144, n. 12.

The second test is met as well. A Chapter 7 trustee has a duty to protect the estate and dividends payable to unsecured creditors by objecting to claims which in his or her judgment are not allowable. 11 U.S.C. § 704(5). Here, however, as a consequence of the Settlement Agreement, and because the value of the assets to be liquidated were more than sufficient to pay all filed claims, the Trustee became indifferent to the allowance of any individual claim. Once the Trustee executed the Settlement Agreement, he had no cause to investigate or object further. After all, the Debtor was going to have to pay each claim, right or wrong. Given that the Trustee was not going to perform those functions,[10] it is common sense that the Debtor would seek leave to object. It is no less sensible then that, as an undischarged guarantor for the payment of all claims against the estate, the Debtor should be, for lack of a better term, subro-

gated to the Trustee's right to challenge claims.

Finally, the Court notes that the Settlement Agreement, to which the Bank did not object and which was approved by the Court, provides that the Debtor shall pay those claims which are "finally allowed." Section 502(a) of the Code provides that claims shall be allowed as filed, unless a party in interest objects. If the Bank intended to exclude the Debtor from those who could file such an objection, that issue should have been raised before the Court approved the Settlement Agreement. Absent timely assertion of those concerns, the Bank waived them.

### B. Equitable Considerations: Laches and the Debtor's Alleged Bad Acts

In order for the defense of laches to apply, the party invoking the doctrine must demonstrate that the delay in bringing the action was unreasonable and that the delay was prejudicial to that party. *In re Weber*, 283 B.R. 630, 636, n. 11 (Bankr. D.Mass.2002); *Adams v. Hartconn Assocs., Inc.(In re Adams)*, 212 B.R. 703, 711 (Bankr.D.Mass.1997); *In re Borer* 73 B.R. 29, 30 (Bankr.N.D.Ohio 1987); *Srebnick v. Lo–Law Transit Mgmt., Inc.*, 29 Mass. App.Ct. 45, 557 N.E.2d 81, 85 (1990). The Bank argues that laches applies in this case because a significant amount of time elapsed between when the Debtor first knew that the Trustee would not object to the Bank's claim and the Debtor's objection. However, the Bank has failed to offer any evidence that the delay was unreasonable or proof of any prejudice which it has suffered on account of the alleged delay. Further, the *In re Thompson* court

---

**10.** Under no circumstances should the Court's recital of the Trustee's failure or refusal to object to claims be read as criticism of the actions of the Trustee. His decisions were justified and a natural consequence of the Settlement Agreement. Moreover, the Settlement Agreement was presented to and approved by this Court.

was unequivocal in stating that "[u]nlike a proof of claim which must be filed before the bar date, an objection to a proof of claim may be filed at any time." 965 F.2d at 1147; *see also In re Kolstad,* 928 F.2d 171, 174 (5th Cir.1991). Accordingly, the objection is timely.

 Finally, the Bank argues that, given his "unclean hands," the Debtor should not be afforded the privilege to object to claims. Indeed, "the clean hands doctrine 'is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.'" *In re Sanborn,* 181 B.R. 683, 692 (Bankr.D.Mass.1995) (quoting *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)). Being so firmly embedded in equity, the application of this doctrine should be committed to the sound discretion of the Court. *Id.*

Here, the exercise of that discretion favors the Debtor. On account of those acts of which the Trustee and the Bank complained, the Debtor has already waived his discharge. He will pay all claims, and his property will be liquidated to ensure that result. This Court deems those consequences significant and sufficient to ameliorate the Debtor's alleged fraudulent transfers.

## III. *CONCLUSION*

The Debtor's "Motion For Leave Of Court To File And Prosecute Objections To Certain Claims" is granted. Accordingly, the Debtor has standing to file the objections to the proofs of claims filed against the estate as set forth in the "Debtor's Objection to Certain Claims," including those of the Bank. The Clerk's Office shall schedule hearings thereon in due course.

A separate Order in conformity with this Memorandum of Decision shall enter in conjunction herewith.