Peter E. **MULLIGAN** and George Whitaker, Claimants–Appellants,

v.

Thaddeus J. **SOBIECH**, Sr., d/b/a Ted Sobiech Farms, Debtor–Respondent.

No. 91 Civ. 3002 (CLB).
Bankruptcy No. 86B30428.

United States District Court, S.D. New York.

Sept. 24, 1991.

918

---

## MEMORANDUM & ORDER

BRIEANT, Chief Judge.

On October 23, 1986, Thaddeus Sobiech Sr., d/b/a Ted Sobiech Farms, filed a bankruptcy petition pursuant to Chapter 11 of Title 11 of the United States Code. The debtor was engaged in the onion farming business and continued as debtor-in-possession throughout the Chapter 11 case. On March 10, 1988 an order converting this case to one under Chapter 7 was entered pursuant to Section 1112(a) of the Bankruptcy Code.

In the spring of 1987, the debtor moved by Order To Show Cause for an order permitting the sale of 71 acres of land owned by the debtor and authorizing the debtor to obtain credit in the sum of $500,-000.00 from Peter E. Mulligan pursuant to 11 U.S.C. § 364(c)(2). By affidavit annexed to the Order to Show Cause the debtor stated that "[a]s security for the repayment of the indebtedness, the lender is requesting that the debtor obtain from the Bankruptcy Court, a security interest under Section 364(c)(2) on the growing crops and the proceeds thereof for the 1987 growing season. The crop, and its proceeds are not currently subject to any liens."

After a hearing on April 3, 1987, the Hon. Jeremiah E. Berk, United States Bankruptcy Court for the Southern District of New York, granted the motion to obtain credit. On April 6, 1987, the Bankruptcy Court entered the "Order Authorizing Debtor in Possession to Obtain Credit and Give Security Therefor Pursuant to 11 U.S.C. [§] 364(c)(2)." The Order as approved and signed by Judge Berk provides in relevant part:

ORDERED, ~~ADJUDGED AND DECREED~~ that pursuant to 11 U.S.C. § 364(c)(2):

1. The debtor be and he is hereby authorized to incur the above described indebtedness solely for farming purposes during 1987 by executing such loan documents as may be reasonably required by the lender in accordance with the terms set forth in the above findings;

2. All or any such indebtedness which may now or from time to time hereafter be owing by the debtor to the lender shall be, and hereby is secured by:

a. ~~Valid, perfected and enforceable liens, assignments and~~ (A) a security interests [sic] in debtor's crops and the proceeds thereof for the 1987 growing season;

b. ~~The lien and security interest approved herein in favor of the lender shall have priority over any and all administrative expenses of any kind (except for fees and expenses that may be approved by this Court for the attorney for the debtor or other attorney's accounts or other professional persons whose employment has been approved by the Court) as well maximum priority in repayment permissible under Section 364(c)(1) of the Code.~~

3. The entering into, execution, performance and consummation of the subject transaction, the line of credit agreement and security documents by the debtor hereby are ~~expressly confirmed and approved~~ authorized.

4. All acts of the debtor herein pertaining to his transaction with the lender as ~~approved~~ authorized by the Court shall be binding on any successor to the debtor, including without limitation any suc-

cessor trustee appointed under any Chapter of the Bankruptcy Code.

On April 8, 1987, the debtor and lender executed a Loan Crop Agreement. Paragraph 5 of this Agreement provides that:

SECURITY: All amounts owed hereunder by the Borrower shall be secured by a security interest under Section 364(c)(2) of the Federal Bankruptcy Act in the onion crop and growing crops of Ted Sobiech Farms and proceeds therefrom for the 1987 growing season as more fully set forth in the Order of Judge Jeremiah E. Berk dated April [6], 1987, a copy of which is attached hereto as Exhibit A and made a part hereof. Borrower agrees to execute any and all documents necessary to effectuate a security interest in the Ted Sobiech Farms' 1987 onion crops and the proceeds therefrom.

Loan Crop Agreement, ¶ 5.

Thereafter, the claimant used the funds to purchase supplies, plant the crop and harvest. The debtor-in-possession failed to repay the line of credit or the crop loan agreement and subsequently converted to Chapter 7 liquidation on March 10, 1988. At the bankruptcy hearing on March 13, 1991, the parties stipulated that the principal amount of the Mulligan Loan was $413,332.33. This amount represents the amount due after the collateral was disposed of by Mulligan and the Chapter 7 Trustee.

On November 28, 1990, the Chapter 7 debtor filed a motion pursuant to Bankruptcy Rule 3007 objecting to the amended proof of claim filed by Mulligan on August 9, 1988, designated as Claim Number 96. Claim Number 96 was filed by Mulligan as a secured claim pursuant to Bankruptcy Code § 364, 11 U.S.C. § 364. Debtor objected to the claim on the ground that Claim Number 96 is not an administrative claim with priority over other administrative claims.

By Order dated March 19, 1991, Judge Berk granted debtor's motion seeking to reclassify Claim Number 96 as a general claim pursuant to Section 348(d) of the Bankruptcy Code 125 B.R. 110. Specifical-

ly the Court found that (1) the debtor has standing to object to the amended proof of claim pursuant to Section 502 of the Code as a party in interest; (2) the claimant is precluded from attempting to set aside the April 6, 1987 Order on the ground of mistake, as the attempt is untimely pursuant to Rule 60(b) of the Federal Rules of Civil Procedure; (3) the April 6, 1987 Order is clear on its face in that it authorized the debtor to obtain credit from Mulligan solely under Section 364(c)(2); (4) the $413,332.33 deficiency portion of Claim Number 96 is not entitled to an unsecured administrative expense priority under either Code Section 364(a), (b) or (c)(1). *See* March 19, 1991 Order.

The matter is before this Court on claimants' appeal from Judge Berk's March 19, 1991 Order. This Court's appellate jurisdiction is based on 28 U.S.C. § 158. The standard of appellate review is de novo review of question of law.

On appeal, claimants argue that Claim Number 96 is entitled to administrative status pursuant to Section 364(a) or (c)(1) and other forms of priority pursuant to Section 503(b). The basis of the claimants argument is that at the time the purchase and loan were presented to the Bankruptcy Court for approval the parties represented that they would seek super priority under Section 364(c)(2) and administrative priority for the debt.

■ On this appeal, this Court must first review the bankruptcy court's determination that the debtor had standing to object to Claim No. 96. While it was once true that a debtor could object to a creditor's claim only in cases where there is no trustee or where a disallowance of the claim objected to would produce a surplus for the debtor, *In re Silverman*, 10 B.R. 734 (Bankr.S.D.N.Y.1981), *aff'd*, 37 B.R. 200 (S.D.N.Y.1982), this is no longer the law. Section 502 provides that an objection may be made by any party in interest. While "party in interest" is not defined in the Code, a debtor is deemed to be a party in interest. 8 L. King, *Collier on Bankruptcy* 3007.03[2] (15th ed. 1990).

In the instant case, if the debtor's objection to Mulligan's claim is sustained, it will directly benefit the debtor, by making funds available to pay the non-dischargeable IRS claims. The IRS has two large non-dischargeable claims. If Mulligan's claim has priority of administrative status, there will be no monies remaining to pay the IRS or any other creditors.

Some courts have limited the standing of a Chapter 7 debtor to object to claims where the objection may interfere with the ability of the Trustee to administer the case. *See e.g. In re Rhoten*, 44 B.R. 741, 743 (Bkrtcy.M.D.Tenn.1984). In this case, however, the Trustee in an affidavit filed on December 19, 1990 stated that "he supports the ability of the Debtor to object to Mulligan's claim."

Accordingly, the bankruptcy court properly concluded that the debtor has standing to challenge Claim No. 96.

■ Mulligan's next argument on appeal is that the April 6, 1987 Order implies that his claim is entitled to administrative expense status under § 364(a), (b) or (c)(1). As Judge Berk held, this contention is contrary to the clear and unambiguous language of the April 6, 1987 Order which refers solely to § 364(c)(2).

While this Crop Loan Agreement may at first glance appear to be constructed in a peculiar way, this Court is persuaded that the Agreement was structured as it was because, unlike the situation of a typical crop loan agreement, this debtor negotiated to obtain a line of credit and the lender negotiated at the same time to purchase 71 acres of the debtor's real property. In fact, Mr. Mulligan's offer of a $500,000.00 loan to be secured by the debtor's crop for the 1987 season was contingent upon acceptance and approval of his concurrent offer to purchase the 71 acres of land owned by the debtor. *See* Tr. of April 3, 1987 hearing, at 22; Sobiech Aff., dated March 25, 1987, ¶ 4.

This Court is also persuaded that the Order signed by Judge Berk on April 6, 1987, after notice and a hearing, was negotiated at arms length and entered upon the consent of the attorneys for the debtor and

purchaser-lender, as well as the Creditor's Committee and the United States Trustee. Both the Crop Loan Agreement and the Court's April 6, 1987 Order create a security interest solely under Section 364(c)(2). It is now too late to renegotiate or modify the transaction to achieve what might have been.

Claimants argue further that Judge Berk's Order of March 19, 1991 prematurely denied the claimants their rights under Section 503(b) to have the loan treated as an administrative priority. In particular, claimants point out that during oral argument on March 13, 1991 the Bankruptcy Court said in effect that the Section 503(b) claim would not be heard on that day and would be reserved for a later date. *See* Tr. 33–34, 41. The transcript reflects, however, that the issue of whether claimants had an administrative priority under Section 503(b) was not an issue properly before the Court during the March 13, 1991 hearing because Claim Number 96 makes no mention of any rights under Section 503(b). *Id.* Since the issue was not properly before the Bankruptcy Court, this Court need not consider the issue on appeal.

Nonetheless, Judge Berk's Order of March 19, 1991 implicitly rejects any argument that claimants might make regarding a Section 503(b) priority. Judge Berk expressly found that "[t]he April 6, 1987 Order is clear on its face in that it authorized the debtor to obtain credit from Mulligan *solely* under Code § 364(c)(2)." March 19, 1991 Order, at 12 (emphasis added). An examination of Judge Berk's April 6, 1987 Order further reveals that all language attempting to create an administrative expense priority was deleted before the Order was signed. While the parties may have at one time contemplated that the Crop Loan Agreement be structured so that Mulligan would have an administrative priority in the bankruptcy proceeding, the Bankruptcy Court did not authorize such a priority and the Agreement did not materialize that way. Mulligan knew this before he furnished the funds.

In any event, if Mulligan wanted to have an unsecured administrative expense priority, he would have to have complied with Local Bankruptcy Rule 47 which requires that a motion for authority to obtain credit or incur debt "shall expressly state whether priority over any and/or all administrative expenses specified in Section 503(b)(2) or 507(b) of the Code is sought." This was not done.

Finally Mulligan claims that the $413,332.33 is entitled to administrative expense status under Section 364(a), (b) or (c)(1). Under Section 364(c)(2), the court may authorize a debtor to incur secured credit out of the ordinary course of its business only if the debtor has been "unable to obtain unsecured credit allowable under section 503(b)(1) ... as an administrative expense." As Judge Berk noted in this case and Judge Schwartzberg explained in *Sapir v. CPQ Colorchrome Corp.*, 87 B.R. 835, 839 (Bkrtcy. S.D.N.Y.1988), *aff'd*, No. 88 Civ. 7015 (S.D.N.Y. Dec. 2, 1988), *aff'd* 881 F.2d 6 (2d Cir.1989):

> Bankruptcy Code § 364 was structured with an escalating series of inducements which a debtor in possession may offer to attract credit in the post-petition period. First, creditors who are willing to extend unsecured credit in the ordinary course of business are offered the inducement of an administrative priority under 11 U.S.C. § 364(a). If a creditor is willing to extend unsecured credit, but not in the ordinary course of business, such credit may be authorized by the court, after notice and a hearing, pursuant to 11 U.S.C. § 364(b). If creditors are unwilling to extend unsecured credit to a debtor in possession, further inducements are offered, with court approval after notice and a hearing, including super priority administrative expenses under 11 U.S.C. § 364(c)(1); secured liens on unencumbered property pursuant to 11 U.S.C. § 364(c)(2); junior liens on encumbered property in accordance with 11 U.S.C. § 364(c)(3), or senior or equal liens pursuant to 11 U.S.C. § 364(d). The mere fact that credit was extended in a post-petition period does not mean that an administrative priority will automati-

cally attach, notwithstanding the origin of the credit.

*Id.*

In support of his Order To Show Cause, the debtor stated that he was unable to obtain financing on an unsecured basis, even after "Herculean efforts." Mulligan's offer to extend credit on a secured basis and purchase the 71 acres was the only financing prospect available to the debtor. Mulligan cannot now assert in the face of this record that he made the loan on an unsecured basis and is therefore entitled to the protections of either section 364(a) or (b). Instead, Mulligan is entitled to the protection he bargained for and was granted in the Order dated April 6, 1987 under section 364(c)(2).

For the foregoing reasons, the decision of the Bankruptcy Court is affirmed.

SO ORDERED.