UNITED STATES of America,
Appellant,

v.

Gary Lee JONES, Appellee/Debtor.

No. 00–71331.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 23, 2000.

Thomas Budzynski, Clinton Township, MI, for Gary Lee Jones.

Peter Sklarew, Thomas P. Cole, Department of Justice, Tax Division, Washington, DC, for U.S.

## *OPINION AND ORDER REVERSING BANKRUPTCY COURT'S ORDER DENYING MOTION TO ALTER OR AMEND ORDER RESTRUCTURING PROOF OF CLAIM OF THE IRS ENTERED IN BANKR. NO. 98–47529*

BORMAN, District Judge.

This case comes here as an appeal from the Bankruptcy Court. The United States appeals an order entered in January of 2000 which purports to order the United States to "remove" its tax lien securing Debtor's property in St. Clair County, Michigan, and also restructures the IRS claim against Debtor. The Court heard oral argument on this appeal on October 19, 2000. For the reasons stated below, the Court hereby REVERSES the Bankruptcy Court's decision, VACATES the Bankruptcy Court's Order dated January 7, 2000, and REMANDS the case back to the Bankruptcy Court for further proceedings not inconsistent with this decision.

## *I. BACKGROUND*

On April 22, 1998, Gary Lee Jones ("Debtor") filed for bankruptcy under Chapter 7 of the Bankruptcy Code. On his list of assets, Debtor listed a residence in Clyde, Michigan (St. Clair County) which is held with his non-debtor wife as tenants by the entireties. Debtor identified the market value as $140,000, with first and second mortgages of $104,797. Total equity in the residence is $35,203, of which Debtor exempted half ($17,602) out of the bankruptcy estate, leaving no value for the

estate. Also on his list of assets, Debtor listed personalty. After applying encumbrances and exemptions, the personalty totaled approximately $7,901. (*See* Appellant's Brief, chart on p. 6.) The deadline for creditors to file objections to Debtor's exemptions passed on June 26, 1998 without a filing. Debtor's discharge was granted on July 29, 1998.

Thereafter, the Trustee went about managing the estate's assets. On September 23, 1998, Trustee applied to sell the estate's interest in the two vehicles listed as personalty on the asset list. The Debtor offered to buy them for $3,100, which Trustee thought was preferable to taking possession of them to liquidate them. Trustee placed *no* value on the remaining personalty. Trustee filed its report as of September 30, 1999 listing a received mount from the estate of $3,125.80, representing Debtor's $3,100 tender plus some interest. Trustee's professional fees appear to be $1,378 plus $28.09 in expenses. The Bankruptcy Court has apparently not yet ruled on the professional fee application. (*See* Docket, in Record of Appeal at R. 001–005.) Should those fees be allowed in that amount, the remainder left in the estate would be $1,719.71.

The United States filed a proof of claim on October 7, 1999, asserting a secured claim of $56,135.89. The claim was for taxes [1]–FICA taxes from five quarters in 1994 & 1995; FUTA taxes for 1995; Debtor's income taxes for 1995 & 1997; plus interest and penalties. On December 1, 1999, Debtor filed Objections to the United States' proof of claim, and sought an order from the Bankruptcy Court that: the United States' claim was not a secured claim; the liens filed on property in St. Clair County should be removed; and, the

---

1. The United States alleges that it has perfected its tax lien by filing a Notice of Federal Tax Lien pursuant to 26 U.S.C. § 6323. *See* Appellant's Brief at 19, 23–24. Debtor does not contest that such a notice was filed.

United States' claim should be restructured to show a priority unsecured claim of $36,318.59, and a general unsecured claim of $19,506.59.

In its Response of December 27, 1999, the United States contended it had a lien interest attaching to Debtor's personalty as listed on his asset list, affording secured status in an amount equal to the unencumbered portion of those assets. Thus, on January 4, 2000, the United States filed an Amended Proof of Claim asserting a secured claim of $11,400, an unsecured priority claim of $31,467.48, and a general unsecured claim of $13,268.41. The Bankruptcy Court held a hearing on January 6, 2000. At that hearing, the Bankruptcy Judge adopted the Debtor's recommendations regarding the United States' claims, and entered an order to that effect on January 7, 2000. *See* Order Re–Structuring Proof of Claim of the Internal Revenue Service Pursuant to Debtor's Objection to Claim, in Record of Appeal at R. 087–88. Thereafter the United States moved the court to alter or amend that order, but the Bankruptcy Court denied that motion by order dated March 17, 2000. (*See* Order Denying United States' Motion to Alter or Amend Order Re-Structuring Proof of Claim of the Internal Revenue Service, in Record of Appeal at R. 125.)

It is from these two orders that the United States appeals. The United States presented these issues: (1) whether the Debtor had standing to object to the claim of the IRS against the bankruptcy estate where the Trustee did not object, and there would be no surplus of estate assets after final distribution by the Trustee; (2) whether the Bankruptcy Court had jurisdiction to order the United States to "remove" liens on property that has been exempted from or is otherwise not part of the bankruptcy estate; (3) whether the real property held as tenants-by-the-en-

tireties is part of a bankruptcy estate wherein only one of the two spouses files for bankruptcy, and the value of Debtor's interest is exempted; (4) whether the Bankruptcy Court erred in ordering the United States to "remove" liens to the extent that there was personal property in the bankruptcy estate to which the United States' tax liens attached; (5) whether the Bankruptcy Court erred in ordering the United States to "remove" liens to the extent such liens secure non-dischargeable tax liabilities, and thus may attach to postpetition property of the Debtor; (6) whether the Bankruptcy Court erred in allowing the Debtor, as part of "restructuring" the IRS claim, to treat partial payments of employment tax as allocable to the trust-fund or withholding tax portion of the taxes so as to leave unpaid the non-trust fund portion that is nonpriority and dischargeable. Although Appellant phrases the issues such that it appears there are six separate issues, there are in fact only two main issues. These are: first, whether Debtor had standing to object to the IRS's proof of claim; second, whether the Bankruptcy Court had jurisdiction to order the removal of a tax lien. Discussion of the other four issues is somewhat embedded in the analysis. These two issues are dispositive in this case. Therefore, the analysis will address these two issues.

## II. Standard of Review of Bankruptcy Court Decisions

The district court reviews a bankruptcy court's conclusions of law *de novo*, and conclusions of fact under the clearly erroneous standard. *In re Isaacman*, 26 F.3d 629, 631 (6th Cir.1994). The two dispositive issues are legal issues, which the Court therefore reviews *de novo*.

## III. Debtor's Standing to Object to Proof of Claim

Under 11 U.S.C. § 502(a), a proof of claim is deemed allowed unless a "party

in interest" objects. *See also* FED. R. BANKR. P. 3008. The Bankruptcy Code nowhere defines the term "party in interest." The vast majority of courts have held that only a Chapter 7 trustee may file objections to a proof of claim.

In fact, almost every court that has dealt with the issue of a Chapter 7 debtor's standing to object, has held that unless there is going to be a surplus, debtors do not have standing to object to a proof of claim. *See In re I & F Corp.*, 219 B.R. 483 (Bankr.S.D.Ohio 1998) (chapter 7 debtor corporation lacks standing to file objections to proof of claims).[2] The only other exception to this general rule can be found in *Mulligan v. Sobiech*, 131 B.R. 917, 920 (S.D.N.Y.1991). In that case, the court held that if sustaining the debtor's objection to (*i.e.*, disallowing) a private creditor's claim would make funds available to pay non-dischargeable IRS claims, the debtor would have standing to object. *Id.* Further, in *Mulligan*, the Trustee had filed an affidavit supporting the debtor's objection. *Id.*

In the instant case, the estate contains about $3,100, and even Debtor concedes that the United States' tax claim exceeds $50,000. There is no possibility of a surplus here that could return to Debtor. Furthermore, Debtor does not suggest that there is a non-dischargeable debt totaling $3,100 or less, nor could he do so without a proper adversary proceeding to determine dischargeability. Indeed, even assuming that Debtor's view of the priority/dischargeability issues is correct,[3] the least amount Debtor has claimed as a general unsecured claim is in excess of $10,000. Therefore, under even Debtor's view of the IRS claim, there is no possible pecuniary interest Debtor can have in the administration of the $3,100 in the estate, because in any event, Debtor will not be entitled to a surplus, nor will administration of the estate funds affect his post-bankruptcy liabilities.

Debtor argues he had standing to object to the proof of claim by the IRS. Debtor's main argument for why the debtor must be a party in interest is that FED. R. BANKR. P. 3007 provides for notice of an objection to a claim to be provided to the debtor. However, this is simply irrelevant. Under the case law, it is obvious that the debtor is expected to con-

---

**2.** *See also Kapp v. Naturelle, Inc.*, 611 F.2d 703 (8th Cir.1979) (debtor under Act lacks standing to object to claim); *In re Woodmar Realty Co.*, 241 F.2d 768 (7th Cir.1957) (corporate debtor under Act lacks standing to object to claim); *Gregg Grain Co. v. Walker Grain Co.*, 285 F. 156 (5th Cir.1922) (debtor under Act lacks standing to object to claim); *Caserta v. Tobin*, 175 B.R. 773 (S.D.Fla.1994) (chapter 7 debtor lacks standing to object to claim); *In re Silverman*, 37 B.R. 200 (S.D.N.Y.1982) (debtor lacks standing to object to claim); *In re Creditors Service Corp.*, 206 B.R. 174 (Bankr.S.D.Ohio 1997) (chapter 7 debtor lacks standing to object to trustee's administration of estate); *In re Woods*, 139 B.R. 876 (Bankr.E.D.Tenn.1992) (chapter 7 debtor lacks standing to object to claim); *In re Dellastatious, Inc.* [90–2 USTC ¶ 50,572], 121 B.R. 487 (Bankr.E.D.Va.1990) (chapter 7 debtor lacks standing to request allocation of distribution to IRS regarding trust fund tax liability); *In re Lapointe*, 39 B.R. 80 (Bankr. W.D.Ky.1984) (debtor in no-asset liquidation case lacks standing to object to proof of claim). *But see In re Brager*, 28 B.R. 966 (Bankr.E.D.Pa.1983) (debtor had standing to object to proof of claim, but court gave no reasons whatsoever for its departure from majority view).

**3.** It appears, though, that Debtor is incorrect on these issues. Priority classification does not necessarily determine dischargeability where tax debts are concerned–for instance, some penalties are not entitled to priority classification under 11 U.S.C. § 507(a) but nevertheless are nondischargeable under § 523(a)(7). This underscores the need for a proper adversary proceeding in this matter, in order to determine dischargeability.

sult with the trustee on matters such as these. *See, e.g., In re Woods,* 139 B.R. 876, 877 (Bankr.E.D.Tenn.1992) (" '[it] is the debtor's duty to inform the trustee and to advise him of the nature of the claim and the reasons that it is said to be improper.... [T]he debtor's right in all likelihood is limited to voicing his personal opposition and to compel the trustee to object.' ") (quoting 3 Collier on Bankruptcy, ¶ 502.01[2] (15th ed.1991)). Furthermore, Rule 3007 shows that when the authors of the bankruptcy rules intend to give debtor a privilege under the rules, they certainly know how to do so. In this case, however, the rules give debtors neither the privilege, nor standing, to object to proof of claims.

Debtor would theoretically have standing to institute an adversary proceeding under FED. R. BANKR. P. 7001 to determine dischargeability issues, because these might affect his post-bankruptcy liabilities. However, no adversary proceeding was instituted in this case–Debtor simply objected to the entire proof of claim, and attempted to restructure it as to secured/priority unsecured/general unsecured status of the amounts. A proper adversary proceeding requires the formalities set out in FED. R. BANKR. P. 7004. Without a proper adversary proceeding, there can be no determination of dischargeability.

Either the Trustee had to object to the United States' proof of claim, or the Debtor had to institute an adversary proceeding to determine dischargeability. Neither of these occurred, Debtor lacked standing to object to the proof of claim.

4. This Court expresses no opinion, and does not hereby make a determination, as to the dischargeability of the secured/priority unsecured/general unsecured amounts in the

## IV. BANKRUPTCY COURT'S JURISDICTION TO ORDER THE "REMOVAL" OF A FEDERAL TAX LIEN

### A. Ordering Removal of the Tax Lien

There is absolutely no statutory provision which gives the Bankruptcy Court authority to order the removal of a properly assessed, properly filed, perfected tax lien. The only section that could arguably allow such an order is 11 U.S.C. § 505, which gives bankruptcy courts authority to determine the amount and legality of a tax. However, neither the amount nor the legality of the tax have been Challenged here. The only issue is how the tax should be structured.[4]

Furthermore, there is case law to suggest that property that is not part of the bankruptcy estate is outside of the jurisdiction of the bankruptcy court. For instance, in *Gardner v. United States* [91–1 USTC ¶ 50,290], 913 F.2d 1515, 1518 (10th Cir.1990), a piece of property was awarded to the debtor's wife in a divorce proceeding in state court during the pendency of the debtor's bankruptcy. The Tenth Circuit held that once the bankruptcy court determined that the debtor owned no interest in the property in question, the bankruptcy court no longer had jurisdiction over that property. *Id.* This decision is persuasive, because it rests on principles that make sense–bankruptcy courts are to administer bankruptcy estates, not property which lies outside the estate. Such property is surely beyond the bankruptcy court's jurisdiction.

The inquiry, then, becomes whether the property discussed in the Bankruptcy Court's January 7, 2000 order was part of the bankruptcy estate.

IRS's proof of claim. The proper forum for that would be a dischargeability adversary proceeding in the bankruptcy court.

## B. The Bankruptcy Estate

### 1. The Entireties Property

■ 11 U.S.C. § 541 outlines what property makes up the bankruptcy estate, Section 541(a)(2)(B) provides in relevant part:

Such estate is comprised of all the following property . . . :

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is– . . .

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

Under *Craft v. United States* [98–1 USTC ¶ 50,305], 140 F.3d 638, 643 (6th Cir.1998), the Sixth Circuit has determined that under Michigan law,[5] one spouse does not possess a separate interest in an entireties property. When *Craft* is applied to § 541(a)(2)(B), it appears that unless an allowable claim is against the debtor *and the debtor's spouse*, neither spouse has an interest in the entireties property which would be liable for that claim. If not, then, that property would not meet the definition of § 541(a)(2)(B), and would therefore not enter the bankruptcy estate.

The case of *In re Grosslight*, 757 F.2d 773 (6th Cir.1985) actually bolsters rather than undermines this analysis. In that case, the debtor and his spouse were jointly liable on promissory note which formed the basis for the controversy. When the lending company tried to reach the couple's entireties property, the court allowed them to do so. The reasoning the court used is this: joint creditors can reach entireties interests–if the entireties property is reachable by joint creditors, it enters the bankruptcy estate. *Id.* at 775–76. The result would probably have been different if the underlying liability was of an individual, rather than joint character.

If the entireties property could never have been attached for Debtor's individual liabilities, it follows that it was never part of the bankruptcy estate to begin with, under 11 U.S.C. § 541. If it was never part of the bankruptcy estate, the Bankruptcy Court had no jurisdiction to order the tax lien removed from that property. The order dated January 7, 2000 must be vacated because it purports to order a removal of a tax lien from property over which the bankruptcy court had no jurisdiction.

### 2. Exempted, Personal, or After–Acquired Property

■ Under federal and Michigan law, the United States is required to perfect its tax lien against a taxpayer by filing a Notice of Tax Lien with the office of the register of deeds for the county where the taxpayer resides. 26 U.S.C. § 6323(f)(1)(A)(ii); Mich. Comp. Laws Ann. § 211.663. This is the procedure for real and/or personal property. Once filed, the tax lien is perfected as a matter of law. *Id.* Nothing more is required.[6] While

---

**5.** Property rights are determined with reference to state law before federal tax consequences are applied to those rights. *Aquilino v. United States* [60–2 USTC ¶ 9538], 363 U.S. 509, 513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

**6.** Debtor argues that a "blanket" lien is improper in Michigan. He is simply mistaken.

Under the Uniform Federal Lien Registration Act, codified at Mich. Comp. Laws Ann. § 211.661 to 211.668 (see specifically § 211.663), all that is required to perfect the federal tax lien, under Michigan law, is the filing of the Notice of Federal Tax Lien in the county of residence.

there are a limited number of liabilities that take priority over a federal tax lien, *see* 26 U.S.C. § 6323, nothing except satisfaction or a lapse in time will extinguish it. 26 U.S.C. § 6322 (lien continues until liability is satisfied, or time lapses). Tax liens operate on all of a taxpayer's property, including after-acquired property. *Id.* Furthermore, 11 U.S.C. § 522(c)(2)(B) specifically excepts from exemption amounts due to a tax lien.

Because the Notice of Tax Lien operates (and continues to operates after bankruptcy) on exempt, personal, and after-acquired property, the Bankruptcy Court lacks jurisdiction to order its removal. Because the order at issue could be read to order the removal of the tax lien as to all property ("... and any other liens which may show of record, shall be removed forthwith." January 7, 2000 Order, at R. 087), it must be vacated. The Bankruptcy Court had no jurisdiction to so order, and it was error not to alter or amend that order to so state.

## C. Conclusion

As noted above, the tax lien exists and attaches to Debtor's property to the full extent allowed by tax law. It encumbers all of Debtor's property in St. Clair County that is not entireties property, and to the extent the amounts of the tax liability are not declared dischargeable, the tax lien will survive bankruptcy. The Bankruptcy Court could not order its removal. First, the real property could not have been part of the bankruptcy estate under the precedent set in *Craft*[7] because Debtor never had a separate interest to which an individual liability (not joint) could attach. Second, property that is not part of the bankruptcy estate, either because it has been exempted out or because the Debtor has not yet acquired it, cannot provide a basis for bankruptcy jurisdiction. The Bankruptcy Court lacked jurisdiction to order the removal of the tax lien.

## V. ORDER

For the reasons set forth above, the Court hereby REVERSES the Bankruptcy Court's decision, VACATES the Bankruptcy Court's Order dated January 7, 2000, and REMANDS for proceedings not inconsistent with this Court's opinion.

SO ORDERED.

---

7. Because *Craft* is still good law, the tax lien itself does not, cannot, and will not attach to Debtor's entireties property unless Debtor's wife ceases to have an interest in the property.