**Michael S. PASCAZI, Appellant,**

v.

**FIBER CONSULTANTS, INC., Appellee.**

No. 10 Civ. 1056 (WHP).

United States District Court, S.D. New York.

Jan. 24, 2011.

Michael S. Pascazi, Esq., Fishkill, NY, pro se.

Evan Wiederkehr, Esq., DelBello Donnellan Weingarten Tartaglia Wise Wiederkehr LLP, White Plains, NY, for Defendant.

*MEMORANDUM & ORDER*

WILLIAM H. PAULEY III, District Judge.

Appellant Michael Pascazi ("Pascazi") appeals from an Order of the United States Bankruptcy Court for the Southern District of New York (Morris, Bankr.J.) dated January 15, 2010, denying Pascazi standing to object to a claim filed by Fiber Consultants, Inc. in the bankruptcy of Fiber Optek Interconnect, Corp. For the following reasons, this Court affirms the Order of the Bankruptcy Court.

## BACKGROUND

### I. *The Bankruptcy and Schedules*

The relevant facts are not in dispute. This case began on February 16, 2005, when Michael Pascazi. Kathleen Pascazi, and Ennio Pascazi filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, to dissolve Fiber Optek Interconnect, Corp. (the "Debtor"). *In re Fiber Optek Interconnect Corp.*, No. 05–30045, slip op. at 1 (Bankr.S.D.N.Y. Jan.15, 2010). A trustee was appointed one month later, and Pascazi was designated as the representative of the Debtor on May 3, 2005. *Fiber Optek*, slip op. at 2. In that capacity, Pascazi prepared schedules listing assets totaling approximately $4.1 million and liabilities totaling approximately $525,000. *Fiber Optek*, slip op. at 2. Approximately $3.8 million of the Debtor's listed assets were anticipated proceeds from causes of action against various entities. *Fiber Optek*, slip op. at 8. After payment of property taxes and brokers' commissions, the estate's real property and personal property returned approximately $308,000. *Fiber Optek*, slip op. at 8. Approximately $1.5 million in claims were filed against the Debtor. *Fiber Optek*, slip op. at 9.

### II. *The Claim and Objection*

On April 5, 2006, Fiber Consultants filed a proof of claim. *Fiber Optek*, slip op. at 2. On November 24, 2008, Pascazi objected to that claim and alleged that the Debtor possessed counterclaims against Fiber Consultants worth $5 million for, *inter alia*, breach of contract and breach of fiduciary duty. *Fiber Optek*, slip op. at 2. On April 9, 2009, over Pascazi's objection, the Bankruptcy Court allowed Fiber Consultant's claim in the amount of $40,094.80 (the "Claim"). Pascazi sought reconsideration. At a hearing on October 20, 2009, the Bankruptcy Court *sua sponte* raised the issue of Pascazi's standing to object to Fiber Consultant's claim. *Fiber Optek*, slip op. at 3. By letter dated October 26, 2009, Pascazi asked the Trustee to investigate and object to the Claim. *Fiber Optek*, slip op. at 3. On November 3, 2009, the Trustee responded that he would "examine all claims once the liquidation process is complete, and will object to claims where appropriate." *Fiber Optek*, slip op. at 3–4.

By Memorandum Decision dated January 15, 2010, the Bankruptcy Court ruled that Pascazi lacked standing to object to the Claim as a creditor, debtor, or equity security holder. *Fiber Optek*, slip op. at 12. This appeal ensued.

## DISCUSSION

### I. *Legal Standard*

A district court reviews a Bankruptcy Court's findings of fact for clear error and its legal conclusions *de novo*. Fed. R. Bankr.P. 8013; *In re Vouzianas*, 259 F.3d 103, 107 (2d Cir.2001); *In re Bennett Funding Grp., Inc.*, 146 F.3d 136, 138 (2d Cir.1998). A pro se litigant's submissions are held to "less stringent standards than [those] drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and "a

court is obliged to construe his pleadings liberally," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004).[1]

## II. *Standing*

Under § 502(a) of the Bankruptcy Code, "a claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). For the purposes of Chapter 11 proceedings, a "party in interest" includes "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee." 11 U.S.C. § 1121(c). But the term is not defined in Chapter 7. Pascazi asserts that he has standing to object to the Claim on the basis of his status as a debtor, creditor, and equity security holder.

### A. *Debtor*

 "It is well-established that a Chapter 7 debtor is a 'party in interest' and has standing to object to a sale of the assets, or otherwise participate in litigation surrounding the assets of the estate, only if there could be a surplus after all creditors' claims are paid." *In re 60 E. 80th St. Equities, Inc.,* 218 F.3d 109, 115 (2d Cir. 2000) (citing Collier on Bankruptcy § 502.02(2)(c)); *see also Bace v. Babitt,* No. 07 Civ. 2420(WHP), 2008 WL 800579, at *2 (S.D.N.Y. Mar.25, 2008). This rule applies to a debtor's standing to object to a claim against the estate. *See In re Man-*

*shul,* 223 B.R. 428, 429 (Bankr.S.D.N.Y. 1998) (citing cases); *see also* Collier on Bankruptcy § 502.02(2)(c). The rule is based on the assumption that "[t]he success of [the debtor's] objection cannot affect him because the debtor receives a distribution only after all creditors have been paid in full, and an estate will rarely have enough assets to do even that." *In re Ulz,* 401 B.R. 321, 328 (Bankr.N.D.Ill. 2009) (citing *Stinnett v. LaPlante,* 465 F.3d 309, 315 (7th Cir.2006); *accord In re I & F Corp.,* 219 B.R. 483, 484 (Bankr. S.D.Ohio 1998); *see also Manshul,* 223 B.R. at 430) ("[A] surplus is highly unlikely in a liquidation proceeding, and standing based on a potential surplus is unlikely to succeed." (quotations and alterations omitted)). Thus, "the debtor usually has no pecuniary interest that would justify objecting to a claim." Collier on Bankruptcy § 502.02(2)(c). An exception exists where the debtor can show a "reasonable possibility of a surplus once all claims are paid." *Ulz,* 401 B.R. at 321 (citing Stinnett, 465 F.3d at 315); *accord* Collier on Bankruptcy § 502.02(2)(c); *see also Manshul,* 223 B.R. at 430.[2]

 Pascazi only has standing to object to the Claim as a debtor if he can demonstrate a "reasonable possibility of a surplus once all claims are paid." *Ulz,* 401 B.R. at 321. This is a question of fact. *See 60 E. 80th Street,* 218 F.3d at 116. The Bankruptcy Court found that the vast majority of the $4,120,762 in assets were "soft assets" consisting of causes of action

---

1. Nevertheless, this Court notes that while Pascazi is proceeding *pro se,* he is a licensed attorney in New York and maintains an office for the practice of law.

2. At least one court has held that "[w]hile it was once true that a debtor could object to a creditor's claim only in cases where there is no trustee or where a disallowance of the claim would produce a surplus for the debtor, this is no longer the law." *Mulligan v. So-*

biech, 131 B.R. 917, 920 (Bankr.S.D.N.Y. 1991). *Mulligan* is of questionable validity after *60 E. 80th St. Equities.* Moreover, *Mulligan* is distinguishable because the debtor's objection there, if sustained, would "directly benefit the debtor, by making funds available to pay ... nondischargeable IRS claims." *Mulligan,* 131 B.R. at 919. Pascazi makes no similar claim here.

against various parties totaling $3,782,500. *Fiber Optek,* slip op. at 8. The Court also found that Pascazi's valuations of his causes of action were not supported by any documentation. *Fiber Optek,* slip op. at 8. Moreover, the Bankruptcy Court noted that the $1.5 million in claims against the Debtor far surpassed the total assets yielded by the Debtor's estate to the present time. *Fiber Optek,* slip op. at 9.

In addition, the Bankruptcy Court noted that Pascazi's valuations on the Debtor's causes of action failed to account for litigation costs or the risks attendant to litigation. *Fiber Optek,* slip op. at 8. Lastly, the Bankruptcy Court noted that the "actual value [of one lawsuit filed by Pascazi] turned out to be less than one-fifth the amount ... estimated." *Fiber Optek,* slip op. at 8. All of these considerations amply support the Bankruptcy Court's decision to discount the valuation of Pascazi's stated causes of action.

Pascazi argues that the Bankruptcy Court erred in discounting the value of his causes of action while failing to discount claims filed against the Debtor. However, Pascazi's argument overlooks the fact that although his causes of action are contingent, the claims filed against the estate are not. Creditor claims against the debtor's estate must be accompanied by a proof of claim, which often requires submission of supporting documentation. *See* Fed. R. Bankr.P. 3001(c) ("When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim."); Fed. R. Bankr.P. 3001(d) ("If a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected."). Moreover, although the costs in litigating the Debtor's causes of action would decrease the value of those lawsuits as assets, the same is not true for creditors' claims because a creditor's litigation costs are born by the creditor, not the debtor's estate.

Pascazi further argues that the Bankruptcy Court erred in discounting the value of his causes of action because filed schedules of assets and liabilities are subject to a presumption of validity, and Pascazi's schedules have not been challenged. *See In re Adelphia Commc'ns Corp.,* No. 02–41729(REG), 2006 WL 346418, at *1 (Bankr.S.D.N.Y. Feb. 6.2006) ("The Debtors' schedules start as prima facie evidence of the obligations stated therein.") However, Pascazi cites no authority for the proposition that a bankruptcy judge is precluded from conducting a meaningful analysis of assets and liabilities when determining the possibility of a surplus. Evaluating the reasonable possibility of surplus is not a precise science. Given the Bankruptcy Court's well-reasoned analysis and familiarity with the underlying facts, this Court finds that its determination was not clearly erroneous.

### B. *Creditor*

"[T]here is no clear consensus on whether a creditor has standing to object to claims of other creditors in a Chapter 7 case." *Manshul,* 223 B.R. at 430. A creditor is a "party in interest" under § 502(a) and thus, at least in theory, has standing to object to the claim of another creditor. *See In re FBN Food Servs., Inc.,* 82 F.3d 1387, 1391 (7th Cir.1996) ("Party in interest" means "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding"); Collier on Bankruptcy § 502.02(1)(d) ("There is no doubt that the phrase 'parties in interest in section 502(a) includes those who have some interest in the assets of the debtor being administered in the case. Under such definition, the debtor's creditors are the primary parties in interest.' ").

■ This principle, however, is subject to a significant—though not universally adopted—judicial limitation. The majority of courts hold that "[a]s a general rule, absent leave of court, the chapter 7 trustee alone may interpose objections to individual proofs of claim." *In re Thompson,* 965 F.2d 1136, 1147 (1st Cir.1992); *accord In re Trusted Net Media Holdings,* 334 B.R. 470, 476 (Bankr.N.D.Ga.2005) (citing cases); *Manshul,* 223 B.R. at 430; *I & F,* 219 B.R. at 484 (Bankr.S.D.Ohio 1998); *In re Sinclair's Suncoast Seafood, Inc.,* 140 B.R. 588, 592 (Bankr.M.D.Fla. 1992); Collier on Bankruptcy § 502.02(1)(d); *see also Ulz,* 401 B.R. at 328 n. 5 (noting that "the Seventh Circuit has not yet decided whether this limitation is valid" and declining to consider the rule's validity). *But see In re JNS Aviation, LLC,* 334 B.R. 202, 205 (Bankr. N.D.Tex.2005). Under the majority rule, "[l]eave to object is not generally accorded an individual creditor unless the chapter 7 trustee refuses to object, notwithstanding a request to do so...." *Thompson,* 965 F.2d at 1147. This rule is premised on the "demands of orderly and expeditious administration." *Manshul,* 223 B.R. at 428 (quoting Fed. R. Bankr.P. 3007 advisory committee's notes). "[I]f every creditor were entitled to challenge the claim of another creditor ...[,] an orderly administration could degrade to chaos." *Manshul,* 223 B.R. at 428 (quoting *Sinclair's,* 140 B.R. at 592). This Court finds these considerations persuasive and adopts the majority approach.

■ Here, Pascazi did not seek the Bankruptcy Court's permission to object to the Claim. *Fiber Optek,* slip op. at 11. Moreover, the Trustee did not reject Pascazi's request that he object to the Claim. Instead, the Trustee responded that he would "examine all claims once the liquidation process is complete, and will object to claims where appropriate." *Fiber Op-*

*tek,* slip op. at 3–4. The Trustee's response to Pascazi is not a refusal to act, but rather an understandable reservation of the Trustee's right to act in the future. Thus, allowing Pascazi to object to the Claim now would threaten the orderly and expeditious administration of proceedings. *See Manshul,* 223 B.R. at 428.

### C. *Equity Holder*

■ Pascazi also asserts standing to object to the Claim based on his status as an equity security holder in the debtor corporation. However, "[f]or the same reason that the Chapter 7 debtor and creditors usually may not object to the allowability of another creditor's claim when there is an appointed trustee, the debtor's stockholders ... lack the standing to object to the allowability of the claims of creditors to the debtor." Collier on Bankruptcy § 502.02(1)(e); *see also In re Vebeliunas,* 231 B.R. 181, 189–90 (Bankr. S.D.N.Y.1999). An equity holder, as part-owner of a debtor corporation, receives payment only if there is a surplus after all creditors' claims are paid. *Cf. 60 E. 80th Street,* 218 F.3d at 116; *see also Vebeliunas,* 231 B.R. at 189 ("[C]ases discussing a [C]hapter 7 debtor's right to be heard when he or she retains an equity interest in the estate hold that the debtor has standing to lodge an objection to a claim against the estate or to participate in litigation surrounding the asset that stands to produce the surplus."). Moreover, to the extent that equity holders resemble creditors, allowing an individual equity holder to object to a claim where a trustee has been appointed poses a similar threat to the orderly and expeditious administration of proceedings. *Cf. Thompson,* 965 F.2d at 1147.

### D. *Standing on a Motion for Reconsideration*

■ "A party in interest may move for reconsideration of an order allowing or

disallowing a claim against the estate." Fed. R. Bankr.P. 3008. Pascazi argues that his motion was one for reconsideration of a claim previously allowed, not an objection to a claim. From that premise, he argues that under Rule 3008, a motion to reconsider an allowed claim can be brought by another creditor in the absence of a surplus.

The Bankruptcy Court rejected Pascazi's argument on the grounds that his motion for "reconsideration" was actually an objection to a proof of claim. *Fiber Optek,* slip op. at 12. However, it is unnecessary to characterize Pascazi's motion because there is no authority supporting the proposition that the standing inquiry on reconsideration of an allowed claim differs from the standing inquiry on an initial objection to the same claim. Indeed, both § 502 of the Bankruptcy Code, which governs objections to claims, and Fed. R. Bankr.P. 3008, which governs reconsideration of allowed claims, use the identical phrase "party in interest" to describe who may act pursuant to these statutes. 11 U.S.C. § 502; Fed. R. Bankr.P. 3008. The considerations that preclude a creditor's standing to object to a claim where a trustee has been appointed apply equally to motions to reconsider an allowed claim. Pascazi's interpretation of Rule 3008 would yield an anomalous result by permitting a party to circumvent the standing requirements for an objection by waiting for the claim to be allowed, and then filing a motion to reconsider.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's order denying Appellant Michael Pascazi standing to object to the Claims is affirmed. This case is remanded to the Bankruptcy Court for further pro-

ceedings consistent with this Memorandum and Order.

SO ORDERED.